NO. 07-06-0403-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

NOVEMBER 26, 2008

______________________________


FRANK GARCIA, APPELLANT

v.

LYDIA GOMEZ, APPELLEE


_________________________________

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-523,605; HON. RUBEN REYES, PRESIDING

_______________________________

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.



MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Appellant Frank Garcia appeals from the trial courtâs judgment finding appellee
Lydia Gomez to be the owner of a tract of land and ordering Garcia to vacate the land. We
affirm.
Factual and Procedural Background
Â Â Â Â Â Â Â Â Â Â Gomez and Barnabe Trevino were divorced in 1990. As part of their divorce,
Gomez conveyed her interest in a tract of land in Lubbock County to Trevino. Later, by a
2001 deed, Trevino conveyed that property to Gomez in forgiveness of back child support
he owed her.
Â Â Â Â Â Â Â Â Â Â Garcia, an associate of Trevino, has resided on the property since 2001. In
September 2003, Gomez filed suit against Garcia alleging conversion, interference and
trespass claims. Garcia filed a general denial. Thereafter, Gomez amended her petition
to include a request for a declaratory judgment that she be adjudicated the true owner of
the real property in question. Trevino was not made a party to the suit.
Â Â Â Â Â Â Â Â Â Â The case was tried to the bench.


 Gomez, Garcia and Trevino testified. Testimony
showed that Garcia had provided funds by which Trevino had redeemed the property in
1997 after tax authorities had sold it for back taxes, and had since provided funds for
improvements and for the payment of taxes on the property. The trial courtâs judgment
declared Gomez to be the owner of the land and ordered Garcia to vacate the property. 
This appeal followed.
Â 
Â 
Issue
Â Â Â Â Â Â Â Â Â Â Garciaâs appellate issue reads: âAfter being tried by consent, the Trial Court erred
in not considering Promissory Estoppel as a defense to the Statute [of] Frauds claim by
[Gomez].â We interpret the issue as challenging the legal sufficiency of the evidence
supporting the trial courtâs failure to find in favor of Garcia on a promissory estoppel
theory.


 AnalysisGarcia contends Trevino had promised to convey two acres from the tract to him in
consideration of his provision of funds for redemption of the property and for payment of
taxes. Garciaâs only pleading was his general denial. Gomez contends Garciaâs failure to
plead his affirmative defense of promissory estoppel bars the defense. Garcia responds
it was tried by consent. For purposes of this opinion, we assume, without deciding, that
Garcia is correct that his promissory estoppel defense was tried by consent.
Â Â Â Â Â Â Â Â Â Â In a bench trial, it is the role of the trial court to resolve inconsistencies in the
evidence. Ponce v. Sandoval, 68 S.W.3d 799, 806 (Tex. App.âAmarillo 2001, no pet.). 
The trial court, as fact finder, is the sole judge of the credibility of the witnesses and the
weight to be given their testimony. Sterquell v. Scott, 140 S.W.3d 453, 461 (Tex.
App.âAmarillo 2004, no pet.). The finder of fact may accept or reject any part or all of a
witnessâs testimony. Vickery v. Commission for Lawyer Discipline, 5 S.W.3d 241, 255 n.5
(Tex.App.âHouston [14th Dist.] 1999, pet. denied). It may believe one witness and
disbelieve others. Id.
Â Â Â Â Â Â Â Â Â Â Here, no findings of fact or conclusions of law were made. The record contains no
request for findings or conclusions. Tex. R. Civ. P. 296. On appeal, this court therefore
must presume the trial court made all fact findings necessary to support its judgment. Zac
Smith & Co., Inc. v. Otis Elevator Co., 734 S.W.2d 662, 667 (Tex. 1987). Because the
record contains a reporterâs record of the trial, however, the sufficiency of the evidence
supporting the implied findings of fact may be challenged. BMC Software Belgium, N.V.
v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002); Roberson v. Robinson, 768 S.W.2d 280,
281 (Tex. 1989).
Â Â Â Â Â Â Â Â Â Â It was Garciaâs burden at trial to prove all the essential elements of his promissory
estoppel defense. See Boy Scouts of America v. Responsive Terminal Sys., Inc., 790
S.W.2d 738, 743 (Tex.App.âDallas 1990, writ denied) (holding burden of proving
promissory estoppel is on party asserting the doctrine). Garcia cites âMooreâ Burger, Inc.
v. Phillips Petroleum Co., 492 S.W.2d 934 (Tex. 1972), in which the Supreme Court held
courts will enforce an oral promise to sign an instrument complying with the Statute of
Frauds if: (1) the promisor should have expected the promise would lead the promisee to
some definite and substantial injury; (2) such injury occurred; and (3) the court must
enforce the promise to avoid injustice. Id. at 934; see Nagle v. Nagle, 633 S.W.2d 796,
800 (Tex. 1982) (applying âMooreâ Burger). 
Â 
Â Â Â Â Â Â Â Â Â Â An appellant attacking the legal sufficiency of evidence supporting an adverse
finding on an issue on which he had the burden of proof must show on appeal that the
evidence establishes, as a matter of law, all vital facts in support of the issue. Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). Because Garcia had the
burden of proof on his promissory estoppel defense, his challenge to the evidence must
fail if the trial courtâs finding is supported by more than a scintilla of evidence. See id. 
Further, even if no evidence appears to support the finding, we must examine the entire
record to determine whether the contrary proposition is established as a matter of law. Id. 
A proposition is established as a matter of law when a reasonable fact finder could draw
only one conclusion from the evidence presented. See City of Keller v. Wilson, 168
S.W.3d 802, 814-16 (Tex. 2005). Garciaâs appellate challenge may be sustained only if the
contrary proposition is conclusively established. Dow Chem. Co., 46 S.W.3d at 241, citing
Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983); Raw Hide Oil & Gas, Inc. v. Maxus
Exploration Co., 766 S.W.2d 264, 276 (Tex.App.âAmarillo 1988, writ denied). 
Â Â Â Â Â Â Â Â Â Â Even assuming, arguendo, that no evidence supported the trial courtâs implied
finding, after examining the entire record, we could not conclude that Garcia established 
his promissory estoppel defense as a matter of law. We need look no further than the
evidence supporting his contention Trevino made a promise to convey him two acres from
the property deeded to Gomez. In support of that vital fact, Garcia points to the following
testimony:
Â 
Â Â Â Â Â Â Â Â Â Â Q.Â Â Â Â Â Â Â (By Mr. Garcia)Â Â Â Â Â Â Â Â The roof on the house and the improvements that I
have done to the place there, the road, who provided
the funds for that?
Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â (By Mr. Trevino)Â Â Â Â Â Â You did.
Â Â Â Â Â Â Â Â Â Â Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Besides the 10,500 [dollars] I helped as muchâMr.
Trevino, after you go into the pen, what happened to
the two acres? 
You deeded the land to Ms. Gomez and can you tell the
Court here with the intention of the two acres coming
back to Frank Garcia?
Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Well, I thought she was going to do the right thing and
give you the two acres, but, I mean, she donât want to
now. And I told her a bunch of times that, âJust do what
is right, and you could have lost the whole thing, you
know, and could have ended up with nothing, butâ--
Â Â Â Â Â Â Â Â Â Â Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Do you recall a statement from Ms. Gomez that she
was not interested in the land no more?
Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Yeah.
Â Â Â Â Â Â Â Â Â Â Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â That she was willing to give up the land? Particularly
this summerâor the past summer, not this summer, but
the summer before, she had aâshe was in a bind . . . .
And how much money did she take away from me, or
borrowed, or got it for the taxes, with the understanding
that the land was going to be conveyed toâthe two
acres?
Â Â Â Â Â Â Â Â Â Â A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â I donât remember. About three hundred, one time, and
maybe seven hundred, another time.
Â 
Â Â Â Â Â Â Â Â Â Â Garcia also refers to Gomezâs testimony, in which she agreed that, when Trevino
conveyed the land to her, he told her âabout the two acres that were supposed to be
deeded to [Garcia].â Elsewhere, Gomez agreed with her counsel that Garcia âalleges to
have loaned money to [Trevino] in order for [Trevino] to redeem the property from the
individual who bought it,â and âalleges that [Trevino] promised to deed Frank Garcia two
of the eight subject acres to this lawsuit in exchange for Mr. Garcia giving him money to
redeem that property[.]â During his testimony, Garcia also testified to the fact that Gomez
was âsupposed to deed me the two acres.â


 We note also that Trevino acknowledged
during his testimony that he understood the need for âsomething in writingâ to convey the
two acres to Garcia.
Â Â Â Â Â Â Â Â Â Â Based on this testimony, reasonable minds could differ on the question whether
Trevino promised to execute a deed to Garcia for two acres from the tract. While it seems
clear that Garcia expected to receive the two acres, and believed Trevino or Gomez was
âsupposedâ to convey them, the evidence of a promise by Trevino to do so is less than
conclusive. See Nagle, 633 S.W.2d at 800. Garcia has not shown that his promissory
estoppel defense to Gomezâs claims was established as a matter of law.


 Accordingly, we
overrule his appellate point and affirm the trial courtâs judgment.
Â 
James T. Campbell

Justice







 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0436.CV%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0436.CV%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0436.CV%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0436.CV%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0436.CV%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-00436-CV

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL A

Â 



JULY
27, 2011

Â 



Â 

IN THE INTEREST OF K.L.J., K.N.J. AND B.H.B., CHILDREN



Â 



Â 

 FROM THE 237TH DISTRICT COURT OF
LUBBOCK COUNTY;

Â 

NO. 2000-509,448; HONORABLE KEVIN HART, JUDGE



Â 



Â 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

Â 

Â 

MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â  Appellant,
H.P.B.,[1]
appeals the termination of his parental rights to his child, B.H.B.Â  We affirm the judgment of the trial court.

Background

The trial courtÂs order terminating
H.P.B.Âs parental rights was entered on September 29, 2010.Â  The trial court found, by clear and
convincing evidence, that termination would be in the best interest of H.P.B.Âs
child, B.H.B., because H.P.B. knowingly placed or allowed B.H.B. to remain in
conditions or surroundings which endangered the childÂs physical or emotional
well-being, engaged in conduct or placed the child with persons that engaged in
conduct which endangered the childÂs physical or emotional well-being, and
failed to comply with a court order.Â  See
Tex. Fam. Code Ann. Â§ 161.001(1)(D), (E), (O) (West Supp. 2010).[2]Â  H.P.B.Âs appointed trial counsel timely filed
a Motion for New Trial and Notice of Appeal with the trial court.[3]Â  H.P.B. filed an application for appointment
of counsel on appeal and affidavit of indigence on October 18.Â  According to the clerkÂs record, the trial
court held a hearing on H.P.B.Âs motion and application on October 19.Â  As a result of this hearing, the trial court
denied H.P.B.Âs new trial motion, denied his claim for indigence, and deemed
his appeal not frivolous.Â  See Â§
263.405(d).Â  

Subsequent to the trial courtÂs
October 19 Order, H.P.B. filed a pro se Motion for New Trial and Notice of
Appeal on October 29, in which he raised additional issues he intends to
appeal.Â  However, this pro se motion and
notice was untimely filed.Â  See Â§
263.405(b).Â  As such, these additional
issues may not be considered by this Court.Â 
See In re J.O.A., 283 S.W.3d 336, 341 (Tex. 2009) (citing section
263.405(i) as barring an appellate court from
considering any issue not presented to the trial court in a timely filed
statement of points).Â  

Â Â Â Â Â Â Â Â Â Â Â  On
December 6, the trial court entered an order discharging H.P.B.Âs trial counsel
from further representation of H.P.B.[4]Â  On December 16, this Court sent H.P.B. notice
that the reporterÂs record had not yet been requested and directed H.P.B. to
request this record by December 28, or the Court may set a deadline for
H.P.B.Âs brief in the absence of a reporterÂs record.Â  See Tex.
R. App. P. 37.3(c)(1).Â  After receiving no response to our
correspondence, on January 7, 2011, we informed H.P.B. that his brief was due
by February 7.Â  H.P.B. filed three
different documents by this February 7 deadline.Â  None of these documents come close to
complying with the requirements of Texas Rule of Appellate Procedure 38.1;
however, this Court construed these documents to collectively constitute
H.P.B.Âs appellate brief.Â  The Department
filed its brief in response on March 24.Â 
H.P.B. filed a document entitled a ÂFinal Summary BriefÂ on May 3, that this Court construed to be a reply brief.Â  See Tex.
R. App. P. 38.3.

Â Â Â Â Â Â Â Â Â Â Â  In
H.P.B.Âs four filings with this Court, he does not present any issues with the
trial courtÂs judgment.Â  See Tex. R. App. P. 38.3(f).Â  After reading each of H.P.B.Âs filings with
this Court, he appears to challenge the trial courtÂs finding that H.P.B.
failed to comply with a court order, but he does not challenge either of the
other bases for termination of his parental rights or the finding that termination
would be in the best interest of B.H.B.Â  

Termination of H.P.B.Âs Parental
Rights

Â Â Â Â Â Â Â Â Â Â Â  Liberally
construing H.P.B.Âs appellate briefs, he appears to challenge the trial courtÂs
finding that he failed to comply with a court order.Â  However, the Order of Termination challenged
by H.P.B. also includes findings that H.P.B. knowingly placed or allowed B.H.B.
to remain in conditions or surroundings which endangered the childÂs physical
or emotional well-being, and engaged in conduct or knowingly placed the child
with persons that engaged in conduct which endangered the childÂs physical or
emotional well-being.Â  See Â§
161.001(1)(D), (E).Â 
Further, H.P.B. does not challenge the trial courtÂs finding that
termination of H.P.B.Âs parental rights is in the best interest of B.H.B.Â  See Â§ 161.001(2).

Â Â Â Â Â Â Â Â Â Â Â  A
parent's rights to "the companionship, care, custody, and management"
of his or her children are constitutional interests "far more precious
than any property right."Â  Santosky
v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388,
71 L.Ed.2d 599 (1982).Â  In a
termination case, the State seeks to end parental rights permanently--to divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child's right to inherit.Â  Â§ 161.206(b) (West 2008).Â  While parental rights are of constitutional
magnitude, they are not absolute.Â  In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).Â  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent-child relationship, it
is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.Â 
Id.

In proceedings to terminate the
parent-child relationship brought under section 161.001, the Department must
establish one or more of the acts or omissions enumerated under subsection (1)
of the statute, and must also prove that termination is in the best interest of
the child.Â  Â§ 161.001; Texas Dep't of
Human Servs. v. Boyd, 727
S.W.2d 531, 533, (Tex. 1987).Â 
While the evidence must establish a violation of subsection (1) and that
termination is in the best interest of the child, only one finding alleged
under subsection (1) is necessary to support a judgment of termination.Â  In re A.V., 113 S.W.3d 355, 362 (Tex.
2003); In re R.W., 129 S.W.3d 732, 744 (Tex.App.ÂFort
Worth 2004, pet. denied).Â  

An appeal of a termination order is
limited to the issues presented in the timely filed statement of points.Â  See Â§ 263.405(i);
see also Pool v. Texas Dep't of Family & Protective Servs., 227 S.W.3d
212, 215 (Tex. App.--Houston [1st Dist.] 2007, no pet.).Â  To satisfy the requirements of section
263.405(i), a statement of points must be
"sufficiently specific" to allow the trial court to correct any
erroneous findings on the challenged grounds.Â 
In re J.J.C., 302 S.W.3d 436, 444 (Tex.
App.--Houston [14th Dist.] 2009, pet. denied).Â  If the statement of points on appeal does not
specifically challenge the sufficiency of the evidence supporting the statutory
grounds for termination, those issues are not preserved for appellate
review.Â  Id.

In the present case, H.P.B.Âs timely
filed statement of points indicate his intent to appeal the DepartmentÂs
alleged denial of psychological assistance as well as the legal and factual
sufficiency of the evidence Âto support the judgment of the Court.ÂÂ  Nothing in this statement of points
specifically challenges the trial courtÂs findings that H.P.B. violated section
161.001(1)(D) and (E) nor that termination would be in the best interest of
B.H.B.Â  As such, those issues are not
preserved for appellate review.[5]Â  Id.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  For
the foregoing reasons, we affirm the trial courtÂs Order of Termination.

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Mackey
K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 











[1] In accordance with
Texas Rule of Appellate Procedure 9.8(b)(2), appellant
and his child will be identified by their initials to protect the minor childÂs
identity.Â  See Tex. R. App. P. 9.8(b)(2).

Â 





[2] Further reference to
provisions of the Texas Family Code will be by reference to Âsection ___Â or ÂÂ§
___.Â

Â 





[3] Under Texas Family
Code section 263.405(b), an appeal of a final order terminating a parentÂs
rights to a child in a suit brought by the Texas Department of Protective and
Regulatory Services (hereafter ÂDepartmentÂ) must include a statement of points
on which the party intends to appeal.Â  See
Â§ 263.405(b)(2) (West 2008).Â  The statement of points must be filed within
15 days after the date the final order is signed by the trial court.Â  See Â§ 263.405(b).Â  The required statement may be combined with a
motion for new trial.Â  Â§
263.405(b-1).Â  In this case, H.P.B.Âs
Motion for New Trial indicates his intent to appeal the DepartmentÂs alleged
denial of psychological assistance to H.P.B as well as the legal and factual
sufficiency of the evidence to support the termination.Â  We construe these issues to have been a timely
filed statement of points.Â  See In
re T.J.H., No. 13-06-00407-CV, 2009 Tex.App.
LEXIS 6688, at *15-*16 (Tex.App.ÂCorpus Christi Aug.
26, 2009, pet. denied) (mem. op.).Â  

Â 





[4]
H.P.B.
requested this Court appoint him appellate counsel, and supported that request
with an affidavit of inability to pay costs.Â 
However, this request was submitted after the trial court held a hearing
on H.P.B.Âs claim of indigence and denied his claim.Â  H.P.B. was entitled to appeal the trial
courtÂs denial of his claim of indigence in accordance with Texas Family Code
section 263.405(g).Â  See Â§
263.405(g).Â  However, nothing in H.P.B.Âs
request for appointment of counsel challenged the trial courtÂs indigency determination.Â 
Further, because no records from the October 19, 2010 hearing on
H.P.B.Âs motion for new trial are part of the appellate record, we are unable
to review this ruling of the trial court.





[5] No reporterÂs record
was filed in this cause due to H.P.B.Âs failure to request same, and, after
notice and a reasonable opportunity to cure was given H.P.B. by this Court,
this Court chose to consider and decide those points that do not require a
reporterÂs record.Â  See Tex. R. App. P. 37.3(c)(1).Â  Thus, even were
we to assume that H.P.B.Âs statement of points challenging the sufficiency of
the evidence to support the trial courtÂs termination was sufficiently specific
to preserve a challenge to the sufficiency of the evidence, in the absence of a
reporterÂs record, this Court must assume the sufficiency of the evidence
supporting the judgment.Â  See Hebisen v. Clear Creek Indep.
Sch. Dist., 217 S.W.3d 527, 536 (Tex.App.ÂHouston [14th
Dist.] 2006, no pet.).